## No. 7107.

MARIE ELIZABETH MARTIN, WIFE OF JOHN DAWSON, VS. PIERRE LANDREAUX AND MARIE LANDREAUX.

The Recorder of Mortgages cannot be held responsible for the loss of the legal mortgage of the wife, by the inscription of the marriage contract in the book of Donations, previous to the legislation which requires that such mortgage be recorded in the book of Mortgages. At that time, the inscription of the contract in the book of Mortgages would have had no more effect than the same in the book of Donations, inasmuch as the legal mortgage of the wife existed without inscription. The Recorder could not be expected to have antici- pated the change of legislation. It was for the wife herself to have complied with the requisites of the new law.

APPEAL from the Sixth District Court for the parish of Orleans. *Rightor*, J.

---

*E. Howard McCaleb* for Plaintiff and Appellant:

First—An action against a Recorder for the damages resulting from the failure of official duty in not inscribing a marriage contract in the register of mortgages (Rev. C. C. Art. 3388), arises *ex contractu*, and is only prescribed by ten years. Brigham vs. Bussy, 26 An. 676 ; Rev. C. C. Art. 3394 ; C. rej. 2 dec. 1816, Mariette. See remarks of Laurent on Art. 2197, Code Napoleon. Troplong, Priviléges et Hypothèques, Tome 4, Nos. 1000, 1001, 1002, 1003, p. 352 *et seq.*; Locré, La Législation Civile, Tome 16, p. 480 ; Bassompiere contre Lamarié, 30 Juin, 1810. Journal du Palais.

Second—A Recorder who undertakes to perform an official duty for an individual upon pay- ment of a fixed fee, incurs a conventional obligation like that of a *negotiorum gestor*. R. C. C. 2295 ; 1756. His obligation was a civil one, created by the operation of the law (R. C. C. 1760), and he thereby assumed all the responsibility resulting from an express agency. The damages, in such a case, are demandable under the articles of the Code, relating to the inexecution of contracts (Rev. C. C. 1930), whether the violation be active or passive. Rev. C. C. Art. 1931 *et seq.*

Third—The duties devolving upon Recording Officers are to the individuals exclusively who have occasion for their official services.   Cooley on Torts, p. 383 *et seq.*   Sherman & Red- field on Negligence, § 286.   Recording Officers are public agents, responsible to those who employ them, "for the damages that may result from the non-performance of their duty " (Rev. C. C. Art. 3002), and "also for their fault or neglect."   Rev. C. C. Art. 3003.

Martin vs. Landreaux.

Fourth—Prescription commences to run against an action to recover damages in such cases only from the date at which the cause of action arose and the injury was sustained. Like the action of an evicted vendee against his vendor, it arises at the time the eviction occurs and resembles an action in warranty. "L'action en garantie contre un conservateur des hypothèques a raison de nullité d'une inscription provenant de son fait, peut être exercée après dix ans de la date de l'inscription." S. V. 17, 1, 317; C. N. 5, 1, 255; D. A. 9, 461.

Fifth—It was the Recorder's duty, under the Code of 1825, and at the time the erroneous inscription in this case was made to register the plaintiff's marriage contract in the register of mortgages (Code of 1825, Art. 3351), and he was then as he is now, "answerable for the injury resulting from omitting to properly record such acts." Code of 1825, Art. 3357.

Sixth—The cancellation of the Recorder's official bond only releases his sureties, but does not affect his liability. 22 An. 29.

### C. E. Schmidt for Defendants and Appellees:

First—The plaintiff's action against the heirs of Pierre Landreaux, who was Recorder of Mortgages for the parish of Orleans in 1835, for damages incurred through alleged failure to record in that year in the proper book in his office the plaintiff's marriage contract, is not an action *ex contractu*, but one *ex delicto*, and is prescribed by one year. C. C. 3536 (3501); 6 N. S. 668; *ib.* 691, *ib.* 710; 15 An. 418.

Second—Even if the prescription only ran from the date of the decision of this Court in May, 1874, (26 An. 534), or from the date of the payment of the proceeds of the property of plaintiff's husband to his other creditors C. C. 3537 (3502), on the 22d June, 1874; still, the prescription had been acquired before the institution of this suit, which was only filed October 15th, 1877.

Third—No reference should strictly be made to a former suit brought by the plaintiff (No. 6444 of this Court—decided on a point not presented by either party, 29 An. 363), but if it should be thought that in fairness to the plaintiff, allusion should be made to it, then, we will say, that the former suit was only brought in July, 1875—after the prescription of one year had been acquired, as conceded at page 4 of plaintiff's original brief in that case.

Fourth—It is admitted by the counsel for the plaintiff at pp. 8 and 9 of the printed brief annexed to the transcript, that her marriage contract containing a constitution of dowry, had to be, and was properly recorded in the Book of Donations, C. C. of 1825, Art. 1541.

Fifth—Under the same Code her mortgage for her dotal rights existed without registry. Art. 3298.

Sixth—If she deemed it useful or proper to have an inscription made of the legal mortgage, she was, by law, authorized to demand it, and should have seen this done in 1835. C. C. 3304 (now 3332).

Seventh—The registry of the wife's legal mortgage under the law in force in 1835 was not intended for her protection, but for that of her husband's creditors.

Eighth—The change in the law, made thirty-four years afterwards, viz: in 1869, and granting a delay within which to make the registry of all legal mortgages, could not have had the effect of imposing a liability on an officer, whose term of office had long since expired, and who, under the laws in force while he continued in office, had incurred no responsibility to the plaintiff.

Ninth—The plaintiff has only herself to blame for the neglect to avail herself of the delay allowed her by the act of 1869, within which to have the proper mortgage inscription made for her own security.

<hr />

The opinion of the Court was delivered by

LEVY, J. This action is brought by Mrs. Martin, a married woman, against the heirs of Pierre Landreaux, to recover the sum of $6762 25, the amount alleged to be due her by her husband and which she has

lost, owing to the negligence and fault of the said Pierre Landreaux, as Recorder of Mortgages, to register or inscribe in the proper book of mortgages, the marriage contract between herself and husband, John Dawson, and by such negligence and failure other creditors have exhausted the property of her said husband to her prejudice and loss, by reason of the non-recordation of said marriage contract in the book prescribed by law.

The contract was entered into on the 5th of March, 1835, and was recorded on the same day in the Book of Donations, in the office of Recorder of Mortgages for the parish and city of New Orleans. The said Pierre Landreaux (now deceased) was at that time holding the office of Recorder of Mortgages.

It appears that in 1872 certain judgment creditors of the husband, Dawson, seized his property, and plaintiff, who had also sued him, obtained a judgment for $6762 25, with wife's privilege and mortgage, and seized under execution the same property which had been previously seized by the other judgment creditors. On oppositions the conflict of seizures and privileges was decided against Mrs. Dawson and in favor of the first seizing creditors, who took all the proceeds of the sales, the amount of which exceeded Mrs. Dawson's judgment. The decision of the Supreme Court, in 26 An. 534, was to the effect that the registry of the marriage contract, made by the Recorder in the *donation book,* was erroneous and without effect, and did not operate as a mortgage on the husband's property. In that case the Court held, that the "wife's mortgage as to her husband's property, existed without the registry, but when the system of this class of mortgages was changed, registry became necessary, and some of the modes prescribed for the registry of the various kinds of mortgages, was essential." It was further held, that the object of Article 1541, Code of 1825, (which was in force when the marriage contract was executed and recorded, viz: in 1835) "was not to give notice of the wife's mortgage upon her husband's property for the protection of her dotal or other rights, but to operate as notice of the property donated, its status and the inability of the donor, probably, or his creditors to, in any manner, affect said property. It relates only to the property embraced in the act of donation, its title and character."

The existence and effect of the wife's mortgage upon the property of her husband, at the time of the registration of the marriage contract in the Book of Donations, were not dependent upon any registry. Being a constitution of dowry, the inscription in the Book of Donations operated as a notice of the legal mortgage with which it was affected, and, at that time, its registry in the Book of Mortgages would have accomplished, under the law in force, nothing more than was done by its registry as actually made in the Book of Donations. Long before the necessity for

recordation in the mortgage book arose, to cause the contract to operate as a mortgage, Pierre Landreaux had ceased to fill the office of recorder. There is no evidence in the record to show any demand upon him to register the instrument otherwise than he had already done; no legal benefit would have accrued to the plaintiff by such registry during his term of office; and if there was loss resulting from any such failure to register, we are at a loss to perceive on what principle, applicable to the state of facts herein, such loss should be borne by the defendants representing Landreaux, the Recorder. It is asking too much to require him to have foreseen future legislation, and he might well ask why the plaintiff herself did not have the registry made prior to the time fixed by the Constitution of 1868, in order to keep alive her privilege and mortgage theretofore accorded by law.

This view of the case disposes of it, and to our minds sustains the judgment rendered in the lower court. -

The judgment appealed from is, therefore, affirmed with costs.